ROBERT H. GARDINER, trustee, *vs.* A. LEO EVERETT, executor, & others.

Suffolk.    December 9, 1921. — March 2, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Trust*, Construction. *Devise and Legacy*, Contingent interest. *Words*, "Issue," "Children," "Family."

Upon a suit in equity, brought by a trustee under a will for instructions, and reserved for determination by this court, the following facts appeared: The testator, who died in 1882 leaving surviving him his widow, a son, a sister, children of a deceased sister and children of a deceased brother, by his will created a trust of the residue of his estate, providing that, upon termination of the trust, one half of the capital should be paid over "equally among my sister [who had survived the testator] . . . the issue of my [deceased] brother . . . and the issue of my [deceased] sister . . . equally to and among each of said families if then living or represented by my sister or by issue of a deceased brother or sister then living." The will as a whole indicated that the testator recognized a difference in meaning between the words "issue" and "children." *Held*, that

(1) The word "issue," as used in the portion of the will above quoted, should be construed in its ordinary sense as including lineal descendants and not as confined to "children;"

(2) The word "families" was used in its more general sense as representing all lineal descendants of a common ancestor;

(3) The interest of those who took under the quoted language at the termination of the trust was contingent upon their being alive at the time of such termination;

(4) The trust fund should be distributed *per stirpes* among the issue, respectively, of the sisters and the brother of the testator, the issue of each family to share that family's one third by right of representation;

(5) An assignment made by one who had died before the date of the termination of the trust and who, had he lived till such termination, would have shared in distribution, was ineffectual as affecting any part of the principal;

(6) An assignment, made fifteen years before the termination of the trust, by the guardian of a minor purporting to convey the minor's interest in income of the fund and in his distributive share of the principal was ineffectual as to the principal if the ward had come of age and was living at the termination of the trust, unless, after he came of age, he ratified the act of his guardian. The question, whether he had so ratified the guardian's act, not being determinable upon the record, was remanded to the single justice for determination.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 30, 1921, and afterwards amended, by

the surviving trustee under the will of Richard S. Fay, late of Boston, for instructions.

John G. Palfrey, Esquire, was appointed guardian *ad litem* for certain minors.

By order of *Braley, J.*, the suit was reserved upon the pleadings for determination by the full court.

*R. H. Gardiner, Jr.*, for the trustee, stated the case.

*J. G. Palfrey*, guardian *ad litem, pro se.*

*A. H. Morse*, for the executor A. Leo Everett and others.

*R. Homans*, for Katherine Fay and another.

*H. H. Bundy*, (*C. Silbert* with him,) for A. Leo Everett individually and others.

*R. L. Robbins*, for Sarah A. and William P. Fay.

*A. B. Carey*, for State Street Trust Company.

DE COURCY, J.   This is a bill, brought by the trustee under the will of Richard S. Fay, for instructions as to the distribution of one half of the trust fund of the residue of the estate.   The testator died on March 7, 1882.   He left a widow, a son Dudley B. Fay, a sister Katharine Everett, the children of a deceased sister Elizabeth F. Parker, and the children of a deceased brother William P. Fay. By article tenth of the will a trust of the residue made certain provisions for his widow (which provisions have now terminated), and provided for his son Dudley B. Fay for life, or until he should become entitled to certain property.   Upon the termination of the son's interest in the income, the testator directed the trustees to "pay one half of the capital to my son outright (if he be living,) and the other half equally among my sister Mrs. Everett, the issue of my brother William P. Fay and the issue of my sister Mrs. Parker, equally to and among each of said families if then living or represented by my sister or by issue of a deceased brother or sister then living."   The trust terminated upon the death of said Dudley B. Fay on February 7, 1921.   One half of the trust fund has been set off to his children, in accordance with the eleventh article of the will; and as to this no questions arise. There are conflicting claims as to the distribution of the other half, calling for the proper construction of the clause above quoted.

1. In our opinion the word "issue" as used in article tenth should be construed in its ordinary sense as including lineal

descendants, and not confined to "children." *Jackson* v. *Jackson*, 153 Mass. 374. *Welch* v. *Colt*, 228 Mass. 511, 515. The will as a whole indicates that the testator recognized a difference in meaning between these words, and did not use them interchangeably and as synonymous, — as was the case in *Silsbee* v. *Silsbee*, 211 Mass. 105. It is true that in article eighth, after stating his expectation that his wife and son will ultimately be amply provided for by property coming from his wife's family, he expresses an intention that a considerable portion of his property "shall go to my brothers and sisters and their children." But here he was merely making a general statement of purpose, not a bequest; and it was not necessary at this point to discriminate between the terms "children" and "issue." In the ninth article, where he creates a special trust of certain property which had come to him from his father's estate, the testator makes manifest that he was aware of the true significance of the words "issue" and "children," and the difference between them. Subject to the provision for his widow, he creates a trust for his sister Mrs. Everett, for life, with a power of appointment by will, and with remainder, in default of appointment, "to her issue then living;" adding "and if she shall die before said termination of my wife's interest, then her issue living at such termination shall stand in her place, and each for a share corresponding to the number of her children," etc. In the same article he creates trusts for the "children" of his brother William P. Fay and of his sister Elizabeth Parker, both of whom were dead. Contemplating the provision for his widow as one of brief duration, he naturally used the terms as he did. As Mrs. Everett was living, and was an immediate beneficiary, the substitutionary gift of her share to her descendants was likely to be in the remote future, and he provided for her "issue." But the immediate beneficiaries of the other shares were the children of his deceased brother William P. and of his sister Mrs. Parker, and they all were minors, — the oldest being twelve years old. The income was to be applied to these children during minority; and the testator used the term "children" in its proper sense. When we come to article tenth and the clause here in question, we find that the gifts to the issue of the deceased brother and sister are no longer comparatively immediate ones, but dependent on two outstanding life

estates. The testator naturally would assume that some of the children of his deceased brother and sister might die before the termination of his son's life estate, and that he should provide for an extended class of remaindermen. Accordingly he used the appropriate word "issue," as he had used the appropriate word "children" in the previous article. In relation to the trust for Mrs. Everett, and the final gift to her descendants, the word "issue" was naturally and properly used in both articles.

In this connection it is argued, on behalf of some claimants, that the use of the word "families" in the clause in question indicates that the testator referred only to children by the use of the word "issue." While the primary meaning of the word "family" is the collective group of persons who form an existing household under one head, it has a well recognized secondary significance, which includes all lineal descendants of a common ancestor. That the testator used it in this more general sense is apparent from the context. Immediately after the word "families" he adds "if then living or represented. . . ."

2. The controversy as to whether the final gift of principal in article tenth is a vested or a contingent remainder arises from the somewhat confusing language used by the testator. If one analyzes the clause in question by fractions, the first portion lends support to a claim that the remainders vested at the testator's death. But when the clause is considered as a whole, the testator's intention seems reasonably clear. He expressly made the gift "equally to and among each of said families if then living or represented by my sister or by issue of a deceased brother or sister then living." These vital words plainly mean that the persons there described shall take only if living at the time fixed for distribution; in other words that the gift is contingent. *Linscott* v. *Trowbridge,* 224 Mass. 108, 111, and cases there cited. This view is confirmed by the use of the word "issue," which more readily imports that the class shall not be determined until the time fixed for distribution; and by the direction to the trustees to divide and pay, instead of using words of present gift. *Ernst* v. *Rivers,* 233 Mass. 9, 14. *White* v. *Underwood,* 215 Mass. 299, 301. The testator plainly indicates what he meant, when in the next article he says "If said half appropriated to said Dudley shall not be disposed of in any of the ways above

mentioned, then it shall go to my brothers and sisters or their issue by right of representation by families as above set forth." Without further discussion the petitioner is instructed that the trust fund in question is to be divided among the issue, living at the death of Dudley B. Fay, of said Katharine Everett, William P. Fay and Elizabeth F. Parker; the issue of each family to share its one third by right of representation. *Anderson* v. *Bean,* 220 Mass. 360. *Hall* v. *Hall,* 209 Mass. 350. *Carr* v. *New England Anti-Vivisection Society,* 234 Mass. 217.

3. By instrument dated March 4, 1896, Richard S. Fay 3d, nephew of the testator, made to his mother, Sarah Abbott Fay, an assignment of property including any interest he had under his uncle's will. That interest was a contingent one, and ceased when he died in 1905, before the death of the life tenant. See *Stowell* v. *Ranlett,* 238 Mass. 599. For the same reason, as Henry M. Parker, son of Elizabeth F. Parker, died before the time for distribution of the property here involved, he had no interest in it which he could pass by his will.

In the instrument of September 10, 1906, Marie McCutcheon, guardian of William P. Fay (minor son of said Richard S. Fay 3d), undertook to assign her ward's interest under the testator's will. It is argued that she could sell and transfer personal property of her ward without obtaining a license from the Probate Court under R. L. c. 145, § 35 (see now G. L. c. 201, § 47), *Gardner* v. *Beacon Trust Co.* 190 Mass. 27. One difficulty with this claim is that the ward had only a contingent interest in the testator's estate, which did not become vested until the death of Dudley B. Fay in 1921. In the meantime said William P. Fay reached his majority in 1914. The guardian attempted in said instrument to transfer to trustees the right, title and interest "coming to the said William Pickman Fay in any manner or form, by devise or inheritance." During his life the trustees were to pay the income to him or for his benefit, or that of his family; and upon his death to such persons as he might by will direct, with limitations over in default of appointment or in default of issue. It is difficult to see what power the guardian had to so restrict her ward in the control of the property to which he became entitled in 1921, under the will of Richard S. Fay. The State Street Trust Company, the trustee, urges, however, that since

attaining his majority in 1914, said William P. Fay has been accepting the benefits under the trust created by the indenture of September 10, 1906, and has ratified the act of his guardian; and that he cannot now be heard to say the assignment is of no effect. As those alleged facts are not disclosed by the record before us we cannot consider them. In the interests of justice, however, they ought to be ascertained by a single justice; and he will determine whether the petitioner shall then pay over this share to said William P. Fay or to the trustee under said trust instrument.

Costs, as between solicitor and client (including the compensation and expenses of guardians *ad litem*), are also to be settled before a single justice.

*Decree accordingly.*