# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

B. LORING YOUNG & others, trustees, *vs.* ROSSITER COTTON
JACKSON & others.

Middlesex.   December 5, 1946. — February 3, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Trust*, Termination; Express trust: construction. *Devise and Legacy*,
"Issue," "Children." *Equity Jurisdiction*, Instructions, Declaratory
relief. *Probate Court*, Petition for instructions, Declaratory relief.
*Declaratory Judgment.*

Under all the terms of a testamentary trust which the testator directed
should continue during the life of the survivor of his grandchildren
and his son-in-law, who were living at his death, and until the youngest
of the "issue" of the grandchildren living at the death of such sur-
vivor should have reached the age of twenty-one years, the word
"issue" had its usual meaning of all the lineal descendants of the
grandchildren and not merely their children, and the trust did not
terminate upon the death of such survivor where, although all the
then living children of the grandchildren had reached their majority,
the youngest of the then living more remote lineal descendants of the
grandchildren had not reached his majority.
This court, upon a petition for instructions in a Probate Court, declined
to instruct trustees as to future duties where minors and persons un-
born or unascertained might have an interest and the contingency
upon which the request for instructions was based had not occurred
and might never occur; nor were the trustees entitled to relief upon an
alternative prayer for a declaratory decree under G. L. (Ter. Ed.)
c. 215, § 6B, as to the same subject matter.

PETITION, filed in the Probate Court for the county of Middlesex on August 2, 1944.

The case was reserved and reported by *Monahan,* J.

*E. C. Thayer,* stated the case.

*B. Aldrich,* (*F. Dexter* with him,) for the respondent Buzby.

*P. B. Sargent,* for the respondent B. Loring Young.

*H. B. Hosmer,* for the respondents Fitzgerald and others.

*S. H. Lewis,* for the respondents heirs of Sophia Munroe.

*J. N. Welch,* for the respondent Emmons, submitted a brief.

*R. B. Walsh,* guardian ad litem, submitted a brief.

DOLAN, J. By this petition filed in the Probate Court the trustees under the will of Benjamin Sewall, late of Weston, seek instructions and also a binding determination under G. L. (Ter. Ed.) c. 215, § 6B, [1] as inserted by St. 1935, c. 247, § 1, as to their duties in certain respects as such trustees. The case was heard upon the pleadings and statements of agreed facts. The judge reserved and reported it for determination by this court. · The prayer of the petition is for instructions or a binding determination respecting the following questions: "1. Whether the trust terminated on the death of Charlotte W. Young or is to continue for a further period. 2. If the trust terminated on the death of Charlotte W. Young, to whom and in what proportion shall the trust fund be distributed. 3. If the trust did not terminate on the death of Charlotte W. Young, upon the happening of what contingency will it terminate. 4. If the trust is to continue for a further period, to whom and in what proportions shall the income of the trust fund be distributed during such continuance. 5. If the trust is to continue for a further period, to whom and in what proportions shall the trust fund be distributed upon its termination. 6. Whether and to what extent, if any, there should be an apportionment of income upon the death of a beneficiary receiving income as between the estate of the deceased beneficiary and those persons thereafter entitled to receive the same." The pro-

---

[1] The petition was filed in the Probate Court on August 2, 1944. See now G. L. (Ter. Ed.) c. 231A, as inserted by St. 1945, c. 582, § 1.

visions of the fourth and twenty-second articles of the will of the testator are those that give rise to the petition.

The material facts follow: The testator died on October 12, 1879, leaving as his only heirs at law three granddaughters, "Louise Sewall Hubbard, Elizabeth Livermore Hubbard and Charlotte Wright Hubbard, the children of Benjamin Sewall's only child, a daughter, then deceased. Louise Sewall Hubbard became by her first marriage Louise S. Jackson and by her second marriage Louise S. Canda; Elizabeth Livermore Hubbard by marriage became Elizabeth L. H. Blake; and Charlotte Wright Hubbard by marriage became Charlotte W. Young. Charles T. Hubbard, the father of said three granddaughters of Benjamin Sewall, was living at the death of Benjamin Sewall." By the fourth article of his will the testator, so far as here material, bequeathed the sum of $300,000 to Charles T. Hubbard and others in trust for the following purposes: "I. To hold, invest, and manage the same with a view to safety rather than profit. II. To pay over and divide the net annual income of said trust fund, after deducting all reasonable expenses, charges and commissions incident to the management thereof, equally to and among the said Charles T. Hubbard and my said grandchildren and the survivors or survivor of them and the issue of any deceased grandchild (such issue taking by right of representation) during the life of the survivor of said Charles and the said grandchildren and until the youngest of the issue of such grandchildren living at the decease of such survivor shall have reached the age of twenty-one years, and thereupon to pay over and divide the principal of said fund to and among the issue of said grandchildren then surviving, the issue of each grandchild taking by right of representation; provided however that each of said grandchildren who may die before reaching the age of forty years may dispose by will of one third of that part of said trust fund whereof at the time of her death she may be entitled to receive the income, and that each of said grandchildren, who may die after reaching the age of forty years and also the said Charles T. Hubbard may dispose by will of one half of that part of the principal of said trust fund of

which at the time of his or her death they may be entitled to receive the income, and in case of such disposition by will by any grandchild the share of income payable to the issue of such grandchild and also the share of the principal ultimately payable to such issue shall be proportionately reduced. III. To pay over, transfer, and convey the whole rest and residue of the principal or income of said trust fund equally to and among my sisters Sophia Munroe and Charlotte Wright and my brother Moses Sewall and my son-in-law Charles T. Hubbard and the children of my deceased sisters, Henry R. Payson and Greenleaf D. Norris, and the heirs of each of the above named, taking by right of representation." The twenty-second article of the will of the testator, disposing of the residue of his estate in trust, after providing for certain annuities, so far as here material, is as follows: "III — To pay over from time to time the rest and residue of the annual income of said last named trust fund and upon the death of the survivor of said annuitants to pay over and convey the principal of said trust fund to the same parties and in the same manner in all respects as if the said income and property were for the time being a part of the principal or income as the case may be of the said trust fund hereinbefore first named," (that is, the trust fund created under the fourth article hereinbefore referred to). The trusts under the foregoing articles of the will are being administered as one fund.

Charles T. Hubbard and the three grandchildren of the testator have deceased. The granddaughter Charlotte W. Young, the survivor of them, died on January 29, 1944. They left numerous issue including children, grandchildren and great grandchildren, over forty in number, living at the death of Charlotte. It is agreed by the parties, and by the guardian ad litem appointed to represent the interests of minors and persons unborn or unascertained, that "it may be taken as a fact that Melanie A. Hunsaker, born April 10, 1944, Ruth Field Oliver, born November 16, 1944, and William Loring Kemp, born November 18, 1944, were all 'living' under the laws of this Commonwealth at the decease of Charlotte W. Young on January 29, 1944." All the chil-

dren of the testator's grandchildren who survived Charlotte had reached their majority prior to her death. The respondent Ellenor Young Buzby is the assignee of the interest of B. Loring Young, Jr., in the estate of the testator.

Concerning the first prayer for instructions as to whether the trust under the fourth article of the will of the testator terminated upon the death of Charlotte W. Young, all of the respondents and the guardian ad litem argue that it did not so terminate. To hold otherwise it would be necessary to construe the word "issue" as meaning children of the testator's grandchildren. We do not adopt that construction, being of opinion that the testator used the word "issue" throughout the provisions of the trust in its usual legal meaning of all lineal descendants. This is borne out by the fact that in each instance, namely, in the gift of income to the grandchildren and issue of any deceased grandchild, in the provision for the duration of the trust, and in the gift of principal at its termination, the testator used the word "issue." It is also a fair inference from the provisions concerning the duration of the trust that the testator was seeking to continue it as long as he could without violating the rule against perpetuities, a subject that he would not be concerned with were he using the word "issue" in the sense of children of his grandchildren rather than in the ordinary sense of lineal descendants of his grandchildren. See *Gray* v. *Whittemore*, 192 Mass. 367. In the instant case the word "issue" is unrestricted in its context, and in these circumstances, as was said in *Jackson* v. *Jackson*, 153 Mass. 374, 377–378, "The tendency of our decisions has been more and more to construe 'issue,' where its meaning is unrestricted by the context, as including all lineal descendants and importing representation [expressly provided for in the present case], and certainly, when the issue take as of a particular time after the death of the testator, and only the issue living at that time take, the issue of deceased issue take by a sort of substitution for their ancestors." And unless the circumstances "manifest a testamentary purpose to attribute to the word 'issue' a signification other than its common one, it will be construed as including lineal descend-

ants." *Welch* v. *Colt,* 228 Mass. 511, 515, and cases cited. See also *Gardiner* v. *Everett,* 240 Mass. 536, 537– 538; *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 260. In our opinion, in the circumstances of the present case, no testamentary purpose to attribute to the word "issue" any signification other than its common one is disclosed. It follows that the trust did not terminate at the death of Charlotte W. Young, but is in full force. This disposes of the petitioners' second request for instructions.

Concerning the fourth prayer for instructions, "to whom and in what proportions shall the income from the trust" estate be distributed after the death of Charlotte W. Young, all of the respondents argue that it is payable two fifths to the issue of Charlotte, two fifths to the issue of Elizabeth L. H. Blake, and one fifth to the issue of Louise S. Canda by right of representation. [1] That that is the correct answer follows from what we have said above as to the first prayer for instructions.

Since the trust of the testator's residuary estate created by the twenty-second article of his will is provided to be paid over and distributed to the same parties and in the same manner as provided in the fourth article of his will, it follows from what has been said above that the contention of counsel for the heirs of Sophia Munroe that the trust fund under article twenty-two is now distributable cannot be sustained.

The prayers for instructions as to when the trust will terminate if it did not terminate upon the death of Charlotte, as to the proportions in which the trust fund will be distributable upon its termination, and as to what extent, if any, there should be an apportionment of income upon the death of a beneficiary receiving income as between the estate of the deceased beneficiary and those persons thereafter entitled to receive the same, are obviously questions as to future duties. All the respondents so concede. We

---

[1] Louise S. Canda appointed by will one half of the principal of that portion of the trust fund on which she had been receiving the income. Neither Charlotte W. Young nor Elizabeth L. H. Blake appointed any principal from their shares but expressly refrained from doing so. (See article 4 of the testator's will; *Dexter* v. *Jackson,* 245 Mass. 333.)

decline to answer or determine those questions. Ordinarily
trustees will not be instructed as to future duties. *Proctor*
v. *Heyer*, 122 Mass. 525, 528. *Hall* v. *Cogswell*, 183 Mass.
521. *Hill* v. *Moors*, 224 Mass. 163, 165. *Swift* v. *Crocker*,
262 Mass. 321, 328. *Hull* v. *Adams*, 286 Mass. 329, 331–332.
That rule should not be departed from unless in unusual
circumstances not present here. (See *Polsey* v. *Newton*,
199 Mass. 450; *Sears* v. *Childs*, 309 Mass. 337, 349–350.)
The dangers of departing therefrom are obvious, [1] especially
where there are minors interested or persons unascertained
or not in being unable to speak other than through a guard-
ian ad litem or next friend, when the contingencies upon
which the requests for instructions are based have not
actually occurred (see *National Shawmut Bank* v. *Morey*,
320 Mass. 492, 499–500), and particularly where, as here,
the event upon the happening of which the future questions
are predicated may never come to pass. In the present case
the future questions are based on the contingency that
William Loring Kemp, the youngest of the issue of the
testator's grandchildren living at Charlotte's death, should
die before reaching the age of twenty-one years. Mani-
festly that question may never arise. Should William die
before attaining his majority, it will be time enough then to
pass upon the future questions propounded in the petition
as to that subject matter. This applies as much to the
alternative prayer of the petition for a declaratory judg-
ment as to those questions. The petition is in essence one
for instructions of which the court below has jurisdiction
under G. L. (Ter. Ed.) c. 215, § 6, under the general princi-
ples cognizable by general equity jurisprudence. Its
character is not changed by the alternative prayer for a
declaratory judgment under G. L. (Ter. Ed.) c. 215, § 6B,
as to the same subject matter. The general principles
concerning the administration of trusts apply in each case.
See *National Shawmut Bank* v. *Morey*, 320 Mass. 492, 499–
500.

In connection with the fourth prayer for instructions as

---

[1] See *Abbott* v. *Williams*, 268 Mass. 275. Compare *Taylor* v. *Albree*, 317
Mass. 57.

to the proper distribution of the income from the trust estate from the time of Charlotte's death, already considered above, the respondent Ellenor Young Buzby, in her answer, seeks to have determined the validity of and her rights under an assignment, made to her by B. Loring Young, Jr. (her husband at the time of its execution), of his interest in the estate of the testator. The agreement was executed in the State of New York. The petitioners have no present duties dependent upon the determination of the validity of that assignment. We decline to pass upon it.

A final decree is to be entered in the court below instructing the petitioners that the trusts involved did not terminate upon the death of Charlotte W. Young but are in full force and effect, and that the income from the trust fund under the fourth article of the will, and the income from the trust fund under the twenty-second article of the will remaining after the payment of the annuities provided for therein, are payable, from the death of Charlotte, two fifths to the issue of Charlotte W. Young, two fifths to the issue of Elizabeth L. H. Blake, and one fifth to the issue of Louise S. Canda, by right of representation in each case, and denying the petitioners' requests for instructions as to future duties. Reasonable allowances for costs and expenses of the proceedings before us may be allowed to the respondents participating therein or to their counsel in the discretion of the Probate Court. The compensation of the trustees is properly the subject of their subsequent accounting. *Frost* v. *Hunter*, 312 Mass. 16, 22. That of the guardian ad litem is provided for by G. L. (Ter. Ed.) c. 201, § 35.

*So ordered.*