VIRGINIA MARSTON CLARK vs. FREDERIC T. GREENHALGE,
SECOND, executor.[1]

Middlesex. November 4, 1991. - December 16, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Will*, Construction, Incorporation by reference, Codicil.

A certain notebook, maintained by a testatrix and dated 1979, which con-
tained specific, written bequests of personal property, was incorporated
by reference into the terms of the testatrix's 1977 will as a memoran-
dum in existence, where the testatrix had executed two codicils in 1980
that ratified the language in the will referring to such a memorandum.
[413-417]

CIVIL ACTION commenced in the Middlesex Division of the
Probate and Family Court Department on January 12, 1987.

The case was heard by *Edward M. Ginsburg*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*James A. G. Hamilton* for the defendant.

*Thomas D. Burns* (*John J. McGivney & Joseph A. Hearst*
with him) for the plaintiff.

NOLAN, J. We consider in this case whether a probate
judge correctly concluded that specific, written bequests of
personal property contained in a notebook maintained by a
testatrix were incorporated by reference into the terms of the
testatrix's will.

We set forth the relevant facts as found by the probate
judge. The testatrix, Helen Nesmith, duly executed a will in
1977, which named her cousin, Frederic T. Greenhalge, II,
as executor of her estate. The will further identified Green-
halge as the principal beneficiary of the estate, entitling him

---

[1] Of the estate of Helen Nesmith.

to receive all of Helen Nesmith's tangible personal property upon her death except those items which she "designate[d] by a memorandum left by [her] and known to [Greenhalge], or in accordance with [her] known wishes," to be given to others living at the time of her death.[2] Among Helen Nesmith's possessions was a large oil painting of a farm scene signed by T.H. Muckley and dated 1833. The value of the painting, as assessed for estate tax purposes, was $1,800.00.

In 1972, Greenhalge assisted Helen Nesmith in drafting a document entitled "MEMORANDUM" and identified as "a list of items of personal property prepared with Miss Helen Nesmith upon September 5, 1972, for the guidance of myself in the distribution of personal tangible property." This list consisted of forty-nine specific bequests of Ms. Nesmith's tangible personal property. In 1976, Helen Nesmith modified the 1972 list by interlineations, additions and deletions. Neither edition of the list involved a bequest of the farm scene painting.

Ms. Nesmith kept a plastic-covered notebook in the drawer of a desk in her study. She periodically made entries in this notebook, which bore the title "List to be given Helen Nesmith 1979." One such entry read: "Ginny Clark farm picture hanging over fireplace. Ma's room." Imogene Conway and Joan Dragoumanos, Ms. Nesmith's private home care nurses, knew of the existence of the notebook and had observed Helen Nesmith write in it. On several occasions, Helen Nesmith orally expressed to these nurses her intentions regarding the disposition of particular pieces of her property upon her death, including the farm scene painting. Helen Nesmith told Conway and Dragoumanos that the farm scene painting was to be given to Virginia Clark, upon Helen Nesmith's death.

Virginia Clark and Helen Nesmith first became acquainted in or about 1940. The women lived next door to each other for approximately ten years (1945 through 1955),

---

[2]The value of Ms. Nesmith's estate at the time of her death exceeded $2,000,000.00, including both tangible and nontangible assets.

during which time they enjoyed a close friendship. The Ne-
smith-Clark friendship remained constant through the years.
In more recent years, Ms. Clark frequently spent time at Ms.
Nesmith's home, often visiting Helen Nesmith while she
rested in the room which originally was her mother's bed-
room. The farm scene painting hung in this room above the
fireplace. Virginia Clark openly admired the picture. Accord-
ing to Ms. Clark, sometime during either January or Febru-
ary of 1980, Helen Nesmith told Ms. Clark that the farm
scene painting would belong to Ms. Clark after Helen Ne-
smith's death. Helen Nesmith then mentioned to Virginia
Clark that she would record this gift in a book she kept for
the purpose of memoralializing her wishes with respect to the
disposition of certain of her belongings.[3] After that conversa-
tion, Helen Nesmith often alluded to the fact that Ms. Clark
someday would own the farm scene painting.

Ms. Nesmith executed two codicils to her 1977 will: one
on May 30, 1980, and a second on October 23, 1980. The
codicils amended certain bequests and deleted others, while
ratifying the will in all other respects.

Greenhalge received Helen Nesmith's notebook on or
shortly after January 28, 1986, the date of Ms. Nesmith's
death. Thereafter, Greenhalge, as executor, distributed Ms.
Nesmith's property in accordance with the will as amended,
the 1972 memorandum as amended in 1976, and certain of
the provisions contained in the notebook.[4] Greenhalge re-

---

[3]According to Margaret Young, another nurse employed by Ms. Ne-
smith, Ms. Nesmith asked Ms. Young to "print[] in [the] notebook, be-
neath [her] own handwriting, 'Ginny Clark painting over fireplace in
mother's bedroom.'" Ms. Young complied with this request. Ms. Young
stated that Ms. Nesmith's express purpose in having Ms. Young record
this statement in the notebook was "to insure that [Greenhalge] would
know that she wanted Ginny Clark to have that particular painting."

[4]Helen Nesmith's will provided that Virginia Clark and her husband,
Peter Hayden Clark, receive $20,000.00 upon Helen Nesmith's death.
Under the terms of the 1972 memorandum, as amended in 1976, Helen
Nesmith also bequeathed to Virginia Clark a portrait of Isabel Nesmith,
Helen Nesmith's sister with whom Virginia Clark had been acquainted.
Greenhalge honored these bequests and delivered the money and painting
to Virginia Clark.

fused, however, to deliver the farm scene painting to Virginia Clark because the painting interested him and he wanted to keep it. Mr. Greenhalge claimed that he was not bound to give effect to the expressions of Helen Nesmith's wishes and intentions stated in the notebook, particularly as to the disposition of the farm scene painting. Notwithstanding this opinion, Greenhalge distributed to himself all of the property bequeathed to him in the notebook. Ms. Clark thereafter commenced an action against Mr. Greenhalge seeking to compel him to deliver the farm scene painting to her.

The probate judge found that Helen Nesmith wanted Ms. Clark to have the farm scene painting. The judge concluded that Helen Nesmith's notebook qualified as a "memorandum" of her known wishes with respect to the distribution of her tangible personal property, within the meaning of Article Fifth of Helen Nesmith's will.[5] The judge further found that the notebook was in existence at the time of the execution of the 1980 codicils, which ratified the language of Article Fifth in its entirety. Based on these findings, the judge ruled that the notebook was incorporated by reference into the terms of the will. *Newton* v. *Seaman's Friend Soc'y*, 130 Mass. 91, 93 (1881). The judge awarded the painting to Ms. Clark.

The Appeals Court affirmed the probate judge's decision in an unpublished memorandum and order, 30 Mass. App. Ct. 1109 (1991).[6] We allowed the appellee's petition for further

---

[5]Article Fifth of Helen Nesmith's will reads, in pertinent part, as follows: "that [Greenhalge] distribute such of the tangible property to and among such persons *as I may designate by a memorandum left by me and known to him, or in accordance with my known wishes*, provided that said persons are living at the time of my decease" (emphasis added).

[6]The Appeals Court rejected the appellant's additional argument that the appellee should have been prevented from proceeding at trial on the theory of incorporation by reference, since she allegedly did not specifically raise or argue this theory in any pretrial pleading. *Gallant* v. *Worcester*, 383 Mass. 707, 709-710 (1981). The record demonstrates that the appellant had sufficient notice of the theory of testamentary bequest as a possible ground for this action. We conclude therefore that this argument is without merit.

appellate review and now hold that the probate judge correctly awarded the painting to Ms. Clark.

A properly executed will may incorporate by reference into its provisions any "document or paper not so executed and witnessed, whether the paper referred to be in the form of . . . a mere list or memorandum, . . . if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein." *Newton* v. *Seaman's Friend Soc'y, supra* at 93. The parties agree that the document entitled "memorandum," dated 1972 and amended in 1976, was in existence as of the date of the execution of Helen Nesmith's will. The parties further agree that this document is a memorandum regarding the distribution of certain items of Helen Nesmith's tangible personal property upon her death, as identified in Article Fifth of her will. There is no dispute, therefore, that the 1972 memorandum was incorporated by reference into the terms of the will. *Newton, supra.*

The parties do not agree, however, as to whether the documentation contained in the notebook, dated 1979, similarly was incorporated into the will through the language of Article Fifth. Greenhalge advances several arguments to support his contention that the purported bequest of the farm scene painting written in the notebook was not incorporated into the will and thus fails as a testamentary devise. The points raised by Greenhalge in this regard are not persuasive. First, Greenhalge contends that the judge wrongly concluded that the notebook could be considered a "memorandum" within the meaning of Article Fifth, because it is not specifically identified as a "memorandum." Such a literal interpretation of the language and meaning of Article Fifth is not appropriate.

"The 'cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided it is consistent with the rules of law.' " *Boston Safe Deposit & Trust Co. v. Park*, 307 Mass. 255, 259 (1940), quoting *McCurdy v. McCallum*, 186 Mass. 464, 469 (1904). The intent of the testator is ascertained through

consideration of "the language which [the testatrix] has used
to express [her] testamentary designs," *Taft v. Stearns*, 234
Mass. 273, 277 (1920), as well as the circumstances existing
at the time of the execution of the will. *Boston Safe Deposit
& Trust Co.*, *supra* at 259, and cases cited. The circum-
stances existing at the time of the execution of a codicil to a
will are equally relevant, because the codicil serves to ratify
the language in the will which has not been altered or af-
fected by the terms of the codicil. See *Taft*, *supra* at 275-
277.

From application of these principles in the present case, it
appears clear that Helen Nesmith intended by the language
used in Article Fifth of her will to retain the right to alter
and amend the bequests of tangible personal property in her
will, without having to amend formally the will. The text of
Article Fifth provides a mechanism by which Helen Nesmith
could accomplish the result she desired; i.e., by expressing
her wishes "in a memorandum." The statements in the
notebook unquestionably reflect Helen Nesmith's exercise of
her retained right to restructure the distribution of her tangi-
ble personal property upon her death. That the notebook is
not entitled "memorandum" is of no consequence, since its
apparent purpose is consistent with that of a memorandum
under Article Fifth: It is a written instrument which is in-
tended to guide Greenhalge in "distribut[ing] such of [Helen
Nesmith's] tangible personal property to and among . . . per-
sons [who] are living at the time of her decease." In this
connection, the distinction between the notebook and "a
memorandum" is illusory.

The appellant acknowledges that the subject documenta-
tion in the notebook establishes that Helen Nesmith wanted
Virginia Clark to receive the farm scene painting upon Ms.
Nesmith's death. The appellant argues, however, that the
notebook cannot take effect as a testamentary instrument
under Article Fifth, because the language of Article Fifth
limits its application to "a" memorandum, or the 1972 mem-
orandum. We reject this strict construction of Article Fifth.
The language of Article Fifth does not preclude the existence

of more than one memorandum which serves the intended purpose of that article. As previously suggested, the phrase "a memorandum" in Article Fifth appears as an expression of the manner in which Helen Nesmith could exercise her right to alter her will after its execution, but it does not denote a requirement that she do so within a particular format. To construe narrowly Article Fifth and to exclude the possibility that Helen Nesmith drafted the notebook contents as "a memorandum" under that Article, would undermine our long-standing policy of interpreting wills in a manner which best carries out the known wishes of the testatrix. See *Boston Safe Deposit & Trust Co., supra.* The evidence supports the conclusion that Helen Nesmith intended that the bequests in her notebook be accorded the same power and effect as those contained in the 1972 memorandum under Article Fifth. We conclude, therefore, that the judge properly accepted the notebook as a memorandum of Helen Nesmith's known wishes as referenced in Article Fifth of her will.

The appellant also contends that the judge erred in finding that Helen Nesmith intended to incorporate the notebook into her will, since the evidence established, at most, that she intended to bequeath the painting to Clark, and not that she intended to incorporate the notebook into her will. Our review of the judge's findings on this point, which is limited to a consideration of whether such findings are "clearly erroneous," proves the appellant's argument to be without merit. *First Pa. Mortgage Trust v. Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). The judge found that Helen Nesmith drafted the notebook contents with the expectation that Greenhalge would distribute the property accordingly. The judge further found that the notebook was in existence on the dates Helen Nesmith executed the codicils to her will, which affirmed the language of Article Fifth, and that it thereby was incorporated into the will pursuant to the language and spirit of Article Fifth. It is clear that the judge fairly construed the evidence in reaching the determination that Helen Nesmith intended the notebook to serve as a memorandum of her wishes as contemplated under Article Fifth of her will.

Lastly, the appellant complains that the notebook fails to meet the specific requirements of a memorandum under Article Fifth of the will, because it was not "known to him" until after Helen Nesmith's death. For this reason, Greenhalge states that the judge improperly ruled that the notebook was incorporated into the will. One of Helen Nesmith's nurses testified, however, that Greenhalge was aware of the notebook and its contents, and that he at no time made an effort to determine the validity of the bequest of the farm scene painting to Virginia Clark as stated therein. There is ample support in the record, therefore, to support the judge's conclusion that the notebook met the criteria set forth in Article Fifth regarding memoranda.

We note, as did the Appeals Court, that "one who seeks equity must do equity and that a court will not permit its equitable powers to be employed to accomplish an injustice." *Pitts* v. *Halifax Country Club, Inc.*, 19 Mass. App. Ct. 525, 533 (1985). To this point, we remark that Greenhalge's conduct in handling this controversy fell short of the standard imposed by common social norms, not to mention the standard of conduct attending his fiduciary responsibility as executor, particularly with respect to his selective distribution of Helen Nesmith's assets. We can discern no reason in the record as to why this matter had to proceed along the protracted and costly route that it did.

*Judgment affirmed.*