PHILIP H. THEOPOLD & others, trustees, *vs.* MASON SEARS
& others.

Suffolk.   February 2, 12, 1970. — May 6, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Devise and Legacy*, Issue.

Respecting a will executed when half brothers of the testator were in
their sixties and had sons or daughters living, which provided that
at the time specified for distribution of certain trust principal it should
be transferred "to the male issue then living (descended through the
male line) of my half brothers such issue to take in equal shares ac-
cording to the stocks regarding the sons of my half brothers as the
original stocks," it was held that in the circumstances neither the
parenthetical clause nor the naming of the sons of the testator's half
brothers as stipital progenitors indicated an intent to exclude such
sons from taking under the will, and that a son of a half brother was
entitled to the principal at the time for distribution as against such
son's son and the latter's son.

PETITION for instructions filed in the Probate Court for
the county of Suffolk on September 4, 1968.

The case was heard by *Keville*, J.

*H. Burton Powers* stated the case.

*Bertram W. Allen* for Philip Sears.

*Richard Wait* for Mason Sears.

*Arthur E. Schoepfer*, guardian ad litem, submitted a
brief.

SPIEGEL, J.   The petitioners seek instructions regard-
ing the distribution of certain assets which they hold
as trustees under the fifth paragraph of the will of the
testator, Frederick R. Sears, late of Boston.   The probate
judge entered a final decree ordering that the assets (after
the payment of certain costs and expenses) be turned over
to Mason Sears, the surviving son of the testator's half
brother Philip.   The appellants are Philip Sears, the son of
Mason Sears, and David Sears, a minor, the grandson of
Mason Sears, and each claims that he is entitled to the
trust assets.

Paragraph five of the will dated May 21, 1929, provides as follows: "In the event of the total failure of issue of mine entitled under the foregoing provisions to take the principal of the trust premises my trustees shall upon the happening of such total failure pay over and transfer the trust premises to the male issue then living (descended through the male line) of my half brothers such issue to take in equal shares according to the stocks regarding the sons of my half brothers as the original stocks. And in default of such male issue of my half brothers my trustees shall pay over and transfer the trust premises to the male issue then living (descended through the male line) of my cousin Henry F. Sears such issue to take in equal shares according to the stocks. And in default also of such last mentioned issue my trustees shall pay over and transfer the trust premises to the persons who would then have been entitled to my personal estate if I had then died intestate and domiciled in Massachusetts such persons if more than one to take according to the statutes."

The testator, Frederick R. Sears, died on December 31, 1939, leaving two children, Frederick, Jr. and Eleanora. In 1947, Frederick, Jr. died without leaving issue. Eleanora died on March 28, 1968, without issue, thereby bringing into effect the provisions of paragraph five of the testator's will.

The testator was survived by three half brothers, Herbert, Philip and Richard. Herbert had two daughters and several grandchildren of both sexes.

Philip and Richard each had male issue. Philip had two sons, Mason and David. David died without issue on June 23, 1929, shortly after the testator had executed his will. Mason, as aforementioned, had a son, Philip, and a grandson, David, the son of Philip. Richard's issue have no interest in the trust assets here entailed.[1]

---

[1] The assets of the trust were divided into Fund "A" and Fund "B." Fund "A" was distributed to Richard's issue in accordance with an agreement of compromise entered into on January 31, 1969. Fund "B" was to be distributed as ordered by the Probate Court.

The paramount question before us is whether the words in paragraph five "to the male issue then living (descended through the male line) of my half brothers such issue to take in equal shares according to the stocks regarding the sons of my half brothers as the original stock" preclude Mason Sears, a son of the testator's brother, from taking under the will.

The appellants contend that the language of paragraph five, if properly interpreted, would show the testator's intent to exclude Mason Sears and those of his generation from taking. The appellant Philip argues that the testator "[b]y modifying the term 'issue' with the words 'descended through the male line of my half brothers,' . . . excluded all issue of the half brothers that were not descended through the male line of the half brothers." He further argues that the testator's "sole purpose for mentioning his half brothers was as points of reference, they being his closest relatives by or through which he could identify the persons he wished to benefit." David argues that "the testator's designation of the sons of his half-brothers as the *original* stocks, . . . can only mean that he intended to designate those individuals the 'ancestors' of the respective 'male lines,' from whom a male issue must be descended *through* the male line to be entitled to share in the principal of the trust." We do not agree with either of these contentions.

In *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 259, we stated that the intention of the testator "is to be ascertained from a study of the will as a whole in the light of the circumstances attending its execution." In the circumstances of the case at bar, we are of opinion that the words "to the male issue then living (descended through the male line) of my half brothers" included the sons of the testator's half brothers. At the time the will was executed, the testator's half brother Philip, sixty-two years old, had two sons; his half brother Richard, sixty-eight years old, had a son and a daughter, and his half brother Herbert was sixty-one years old and had two daughters. We think that the parenthetical clause "descended through the male line"

modified the words "to the male issue then living" and revealed the testator's intent to exclude the living male issue, if any, of the daughters of his half brothers or the male issue that might be born to those daughters, and not his half brothers' sons.

The assets were to be distributed to the "issue . . . in equal shares according to the stocks" or per stirpes. See *Bradlee* v. *Converse,* 318 Mass. 117, 119; *Agricultural Natl. Bank* v. *Miller,* 316 Mass. 288. The fact that the testator designated "the sons of . . . [his] half brothers as the original stocks" does not preclude them from taking under the will. Considering the circumstances it may be inferred that it would have been impracticable for the testator to have designated his half brothers as stipital progenitors, since all were in their sixties, and that he as a matter of convenience and fairness named the then living sons of his half brothers as stocks. In a gift per stirpes the stocks may be and often are "among the takers themselves." *Bradlee* v. *Converse, supra,* at 120.

Although the term "issue" is ordinarily construed to include "all lineal descendants" (*Young* v. *Jackson,* 321 Mass. 1, 5; *Prince* v. *Prince,* 354 Mass. 588, 591), there is a well established rule of construction against permitting "children to compete with their living parents." *Evarts* v. *Davis,* 348 Mass. 487, 489, and cases cited. Further, the term "issue" "does not include children of living descendants unless that is the clear intention" of the testator. Newhall, Settlement of Estates (4th ed.) § 354, p. 440. *Evarts* v. *Davis, supra,* at 490. We discern no such intent.

The decree is affirmed. Costs and expenses of this appeal are to be awarded in the discretion of the Probate Court.

*So ordered.*