ROGER ERNST, trustee, *vs.* ROBERT W. RIVERS & others.

Suffolk. March 3, 1919. — April 17, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Devise and Legacy,* "Lineal heirs." *Power. Rule against Perpetuities. Words,* "Lineal heirs."

A mother by her will gave to her son certain property for life with a power, in the event of his dying without issue living, of appointment among the "lineal heirs" of the mother. The will of the son, who died without issue living, provided that a certain portion of the fund should be held in trust for the benefit of a niece of the son during her life, and, in the event of her dying leaving no issue surviving her, that it should be conveyed "to the lineal heirs of" the testator's "mother," and, if there were no such "lineal heirs" then living, then to certain cousins. The testator's mother died in 1859, the testator in 1875, and his niece in 1918, no issue surviving her, at which time there were living nine great-grandchildren of the testator's mother, one a child of one grandchild, and eight of another grandchild, and nine great-great-grandchildren, children of three of these same living great-grandchildren, and no children of any deceased great grandchild. Upon a bill in equity by the trustee for instructions, it was *held,*

(1) That the trust provision was not void as a violation of the rule against perpetuities because the life beneficiaries were all living before the death of the donor of the power;

(2) That the testator intended to use the words "lineal heirs" in the same sense that his mother had used them in her will;

(3) That in the provision in question, the words "lineal heirs" meant descendants of the mother who were living at the time of the death of the niece in the same degree of relationship;

(4) That the great-great-grandchildren, all being children of living great-grandchildren, were not entitled to share in the fund;

(5) That the fund should be divided equally among the nine great-grandchildren of the testator's mother.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 15, 1918, and afterwards amended, by the surviving trustee under the will of Jonathan Russell, late of Milton, for instructions.

Clifford H. Walker, Esquire, was appointed guardian *ad litem* for certain minors, great-great-grandchildren of the mother of the testator.

The suit was reserved by *Crosby*, J., upon the amended bill and answers for determination by the full court.

*H. K. Brown,* for the trustee, stated the case.

*B. Corneau,* (*R. Frothingham* with him,) for the defendant Robert Wheaton Rivers.

*W. L. Van Kleeck,* (*E. A. Howes, Jr.,* with him,) for Mary G. M. Shields and others.

*C. H. Walker,* guardian *ad litem, pro se.*

CROSBY, J. This is a bill for instructions by the surviving trustee under the will of Jonathan Russell.

The trust fund respecting which the trustee desires instructions has been held heretofore for the benefit of one Mary Rivers, a niece of the testator, who died on August 7, 1918, thereby ending the trust except for the purposes of distribution.

By her will as modified by the first and third codicils, Lydia Smith Russell, mother of Jonathan Russell, disposed of her estate (so far as material to the questions involved in this case) as follows: She devised and bequeathed one fourth of her estate (increased to one third by the death of her daughter Ida before the testatrix's death) to her son Jonathan, to have and to hold for and during his natural life with the power of appointment by will, which in its final form as expressed in the third codicil is as follows: "It is

my will that my daughters and son shall have power of disposing of their respective shares of my estate among my lineal heirs, to have and enjoy the same upon such terms and provisions as may be prescribed by my children. The foregoing provisions are made for appointments to take effect in case of the death of any of my children without issue then living." The testatrix, Lydia Smith Russell, died in 1859 and was survived by three children, namely, Jonathan Russell who died in 1875 without issue, Geraldine I. (Rivers) Upton who died in 1885 leaving three children, and Rosalie G. Russell who died in 1897 without issue.

The children of Geraldine who survived her were George R. R. Rivers who died in 1900 and is survived by one child, Robert Wheaton Rivers; Rosalie G. Sheffield who died in 1909 leaving nine children, one of whom has since deceased without issue; and Mary Rivers who died in 1918 without issue. She was the last of the grandchildren. It thus appears that at the time of the death of Mary Rivers there were living nine great-grandchildren of Lydia Smith Russell, namely, the surviving son of George R. R. Rivers and eight surviving sons and daughters of Rosalie G. Sheffield; and no issue of any deceased great-grandchildren. The son of George R. R. Rivers has three children. One of the sons of Rosalie G. Sheffield has two children; one of her daughters had four children at the date of Mary Rivers' death, one of whom has since died. The descendants of Lydia Smith Russell living at the date of Mary Rivers' death therefore were nine great-grandchildren and nine children of three of these same great-grandchildren.

Under the will of Lydia Smith Russell as modified by the first and third codicil thereto, Jonathan Russell received one third of his mother's estate in trust for his benefit for life with power (in the event of his death without issue then living) to appoint by will the principal among the "lineal heirs" of his mother at his decease.

Under the third article of Jonathan Russell's will as modified by the first codicil, he devised and bequeathed the fund as follows: To his sister Rosalie G. Russell he gave a life estate in certain real estate in Milton; and the rest of his estate to trustees to pay the income in equal shares to his two sisters, Geraldine I. Upton (formerly Rivers) and Rosalie G. Russell during their respective

lives, — Geraldine to receive the entire income if Rosalie should die first. If (as happened) Geraldine should die first, the trust fund should then be divided into two equal parts, one of which the trustees should continue to hold for the benefit of his [the testator's] sister Rosalie during her life; the other half was to be divided into three equal parts, one of which was to go to Geraldine's son George R. R. Rivers absolutely, and the other two thirds were to be held in trust for the benefit of Geraldine's two daughters, Mary Rivers and Rosalie G. Sheffield, equally during their respective lives; it being provided that on the death of each of these two daughters the trustees "shall convey in fee simple and transfer" the principal of the share so held in trust for her benefit to her children then living and the lawful issue of any deceased child of such daughter; and in the event that either daughter should leave no lawful issue surviving at her death, then they (the trustees) shall under the first codicil "convey in fee simple and transfer" such share "to the lineal heirs of my mother, Mrs. Lydia Smith Russell," and if there be no such "lineal heirs" then living to my cousins Mrs. Lucinda Jameson and Mrs. Sarah Ernst, in equal shares; "or if either of them be then dead, to convey in fee simple, transfer and pay over her said share to her lawful issue then living." The provision so made under the first codicil was in substitution for a provision in the original will, which directed the trustees, upon the contingency above referred to, to "convey in fee simple and transfer the same to the persons who shall then be the heirs at law of my said sister Geraldine." The will and codicil provide for the same disposition of Rosalie G. Russell's share after her death, including the real estate in Milton. This real estate has been sold and one third of each half of the principal of the fund and of the proceeds of the real estate has been distributed to George R. R. Rivers.

That part of the remainder which was held in trust for Mrs. Sheffield (Geraldine's daughter) and one third of the proceeds of the real estate in Milton have been distributed to her surviving heirs under the terms of the will. *Leverett* v. *Rivers*, 208 Mass. 241. As previously stated this bill for instructions relates to the final distribution of the portion of the trust fund held for the benefit of Mary Rivers, Geraldine Upton's unmarried daughter who died on August 7, 1918, without issue. The trustees are directed by the

testator upon the happening of this contingency to "convey in fee simple and transfer" the fund so held in trust for Mary Rivers to the "lineal heirs of my mother, Mrs. Lydia Smith Russell;" and the questions are, what persons are entitled thereto, and in what proportions?

The trust fund so to be distributed consists of one third of the trust estate created by the testator's will, — being one third of the one half which was partially distributed on the death of Geraldine; and one third of the one half which was thereafter held for the use and benefit of Rosalie G. Russell, and was partially distributed after her death; and also, one third of the proceeds of the real estate in Milton.

The trust created by the will of Jonathan Russell is not contrary to the rule against perpetuities, as it appears that the three children of Geraldine I. Upton were all in being before the death of Lydia Smith Russell. *Leverett* v. *Rivers, supra.*

In exercising the power of appointment given to him by his mother's will, the testator followed closely the language used by her in her will; and it is a reasonable inference that in making his appointment he used the words "lineal heirs" in the same sense in which he believed them to have been used in her will, and intended them to have the same meaning.

It is plain that "lineal heirs" means descendants. While the testator's mother died in 1859, his death did not occur until 1875, and it would seem certain that he did not intend to use the word "heirs" in the strict legal sense of heirs as they existed at the time of his mother's death. At that time they were his two sisters and himself. If he had meant them the use of the word "lineal" would have been unnecessary. When the will is construed as a whole, in view of all the circumstances it could not reasonably be found that he intended to include himself and his two sisters as the only members of a class who should take upon the final distribution of the fund. Having provided an equitable life estate for each of the daughters of Geraldine who should survive her mother, this sister would not have been living when the contingency happened upon which "lineal heirs" would become entitled. Besides, he expressly provided in the first codicil that his trustee should convey to his two cousins if there shall be no such "lineal heirs" then living. In view of these considerations and the other provisions of his will,

it is manifest that he did not intend to make a gift to a class the members of which were to be determined as of the date of 'his mother's death, but that such heirs should be ascertained on the happening of a future event, at which time the trustees were to transfer and convey the fund.

The general rule of construction that the rights of devisees or legatees are to be taken to vest at the time of the testator's death cannot prevail if contrary to the clearly expressed intention of the testator. *Heard* v. *Read,* 169 Mass. 216. *Bosworth* v. *Stockbridge,* 189 Mass. 266. *Crapo* v. *Price,* 190 Mass. 317. *White* v. *Underwood,* 215 Mass. 299. The time when the trustees are directed to transfer and convey the fund to the "lineal heirs" of the testator's mother must be held to have referred to the time when Mary Rivers died, without issue. It is a general rule of construction to be followed unless the testator has clearly manifested a contrary intention that a devise or bequest to "heirs" or "issue" refers to that class of beneficiaries who would be entitled to take under the law of intestate succession if the designated ancestor had died at the time fixed for ascertaining the class, and also indicates that the members of the class so determined are to share in the same manner and proportions as such persons would share under the statute relating to the distribution of intestate estates. *Houghton* v. *Kendall,* 7 Allen, 72. *Rand* v. *Sanger,* 115 Mass. 124. *Allen* v. *Boardman,* 193 Mass. 284, 286.

Where a gift is made to members of a class described as "heirs" or "issue" in accordance with the rule last above stated it is held that grandchildren and their descendants will not be allowed to compete with their parents unless such was the intention of the testator. We find no such intention on the part of the testator in the case at bar. In *Manning* v. *Manning,* 229 Mass. 527, at page 529, it was said: "By allowing the grandchildren and great-grandchildren to take simultaneously it admits children to compete with their living parents, — a construction to be avoided unless such plainly was the testator's intention." *Jackson* v. *Jackson,* 153 Mass. 374. *Coates* v. *Burton,* 191 Mass. 180. *Dexter* v. *Inches,* 147 Mass. 324. It follows that the "lineal heirs" of Lydia Smith Russell at the date of Mary Rivers' death are her nine great-grandchildren; and that their children, although descendants of Mrs. Russell, are not members of the class described in the will

of the testator because, their parents being alive, they would not be entitled to inherit from Mrs. Russell under the statute of distribution. R. L. c. 133, § 1. And as all of the nine members of the class are of the same degree of kindred to Mrs. Russell they are entitled to share equally.

While it is agreed by counsel for the great-great-grandchildren that the "lineal heirs" are those living at the time of the death of Mary Rivers, and that when she died the time for distribution had arrived, he contends that the words "my lineal heirs," as used in the third codicil of Mrs. Russell's will which gave to her son Jonathan the power of disposing of his share of her estate "among my lineal heirs," mean all the descendants of Mrs. Russell however remote, and that those words were so construed by this court in the case of *Leverett* v. *Rivers, supra.* In that case the question for decision was whether the appointment to children of Mrs. Sheffield born after Jonathan Russell's death was valid. The statement in the opinion that "When a power is given to appoint among the lineal heirs (which in this case as matter of construction means descendants) of the testator . . ." meant that "lineal heirs" were direct descendants as distinguished from collateral heirs. The court did not undertake to define in that case the limits of the class who would be entitled to take on final distribution upon the contingency which has happened in the case at bar.

We cannot agree with the contention of Robert Wheaton Rivers that he is entitled to one half of the estate, and that the other half should be divided between the eight surviving children of Rosalie G. Sheffield. There is nothing to show that the testator intended that the distribution should be *per stirpes;* such a division would not be in accordance with the rule of the statute of distribution, and would be contrary to the rule of construction applied in cases hereinbefore referred to where the word "heirs" and the word "issue" have been used in description of a class.

A decree is to be entered directing the petitioner to transfer and convey one ninth part of the trust fund with accumulations of income since the death of Mary Rivers, to each one of the eight surviving children of Rosalie G. Sheffield, and the remaining one ninth part to Robert Wheaton Rivers, the only surviving child of George R. R. Rivers. Costs and counsel fees are to be allowed to be paid out of the fund to the guardian *ad litem* of the great-great-

grandchildren for his services, the amount to be determined by a single justice.

*So ordered.*