RHODES G. LOCKWOOD & another,[1] trustees,
*vs.* JANET ADAMSON & others.[2]

Middlesex. November 8, 1990. - February 6, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Devise and Legacy*, Issue, Determination of class, Adopted child. *Trust*,
Adopted child. *Adoption*, Succession to property. *Words*, "Issue," "In-
herit," "Succession to property."

In accordance with the law of the Commonwealth and the judicial con-
struction of the term "issue," the intent of a testator executing a will in
1972 with respect to a testamentary trust distribution was that his "is-
sue" included a grandson who had been adopted out of the testator's
family by his biological mother's second husband. [328-331]
General Laws c. 210, § 7, providing that "a person shall by adoption lose
his right to inherit from his natural parents or kindred," was held to
apply only to the inheritance of property through intestate succession,
with the result that a testator's grandson, adopted out of the testator's
family by his biological mother's second husband, could inherit from his
grandfather by devise or bequest. [331-333]
The term "succession to property" appearing in the first sentence of G. L.
c. 210, § 6, was held to refer to transfers by will or trust as well as
under the laws of intestacy, and thus that section did not bar a testa-
tor's grandson, adopted out of the testator's family by his biological
mother's second husband, from inheriting from his grandfather by de-
vise or bequest. [333-334]

COMPLAINT for instructions filed in the Middlesex Division
of the Probate and Family Court Department on September
16, 1988.

---

[1]Edward F. Hines, Jr. By order of the Appeals Court, the plaintiffs in
this action for instructions, the trustees, Lockwood and Hines, have been
designated the appellants.

[2]Henry St. John Smith, IV, Ruth Meleen, Michael St. John Smith, and
Brooks C. Huyck (now named Brooks St. John Smith). See note 5, *infra*.

The case was considered by *Vincent F. Leahy*, J., on a statement of agreed facts, and was reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Brian C. Broderick* for the plaintiffs.

*Lane McGovern* (*Marc J. Bloostein* with him) for Brooks St. John Smith.

*G. Mitchell Eckel, III*, for Janet Adamson & others.

LYNCH, J. The trustees of a testamentary trust seek instructions as to whether a child adopted by his biological mother's second husband may share in the trust income under a bequest to "issue" of the child's natural father. It is contended by Janet Adamson, Ruth Meleen, Henry St. John Smith, IV, and Michael St. John Smith (hereafter referred to collectively as the Adamson appellees), first, that the term "issue" does not include such an adoptee, and, second, that G. L. c. 210, §§ 6, 7 (1988 ed.),[3] preclude the child from

---

[3]General Laws c. 210, § 6 (1988 ed.), states in pertinent part: "If the court is satisfied of the identity and relations of the persons, and that the petitioner is of sufficient ability to bring up the child and provide suitable support and education for [him], and that the child should be adopted, it shall make a decree, by which, except as regards succession to property, all rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between the child and the petitioner and his kindred, and such rights, duties and legal consequences shall, except as regards marriage, incest or cohabitation, terminate between the child so adopted and his natural parents and kindred or any previous adopting parent; but such decree shall not place the adopting parent or adopted child in any relation to any person, except each other, different from that before existing as regards marriage, or as regards rape, incest or other sexual crime committed by either or both. The court may also decree such change of name as the petitioner may request. If the person so adopted is of full age, he shall not be freed by such decree from the obligations imposed by section six of chapter one hundred and seventeen and section twenty of chapter two hundred and seventy-three."

General Laws c. 210, § 7 (1988 ed.), provides: "A person adopted in accordance with this chapter shall take the same share of that property which the adopting parent could dispose of by will as he would have taken if born to such parent in lawful wedlock, and he shall stand to the kindred of such adopting parent in the same position as if so born to him. If the person adopted dies intestate, his property shall be distributed according to chapters one hundred and ninety and one hundred and ninety-six among the persons who would have been his kindred if he had been born to his

sharing in the testamentary class gift. The trustees filed a complaint for instructions in the Probate and Family Court, which reported the case without decision to the Appeals Court. We transferred the case here on our own motion. We conclude that the child may take under the class gift in this case.

The parties agree to the following material facts. On February 2, 1972, William P. Wharton (testator) executed a will providing for a trust. The will states that the trustees shall pay one-half of the trust income to the testator's nephew, Dr. Henry St. John Smith (Dr. Smith), "or his issue by right of representation if he is not living on the date of distribution." The will further directs that, upon termination of the trust, the trustees shall pay one-half of the trust principal to Dr. Smith or, if he is not then living, to his "issue by right of representation." The trust has not yet terminated.

Dr. Smith died in September, 1986, survived by four children (Adamson appellees). A fifth child, Christopher St. John Smith, predeceased Dr. Smith leaving a son, Brooks, who is also a party to this proceeding.[4] Brooks, Dr. Smith's grandson, was born on June 1, 1967, the legitimate child of Christopher and his wife, Hilary.

Christopher and Hilary had been divorced in February, 1969, and Hilary married William C. Huyck the following July. Christopher died less than one month later. On May

---

adopting parent in lawful wedlock. The apportionment and distribution shall be ascertained by the court. A person shall by adoption lose his right to inherit from his natural parents or kindred, except when one of the natural parents of a minor child has died and the surviving parent has remarried subsequent to such parent's death, subsequent adoption of such child by the person with whom such remarriage is contracted shall not affect the rights of such child to inherit from or through the deceased parent or kindred thereof. The court may decree that the rights of succession to property under this section shall vest in the person adopted as of the date of the filing of the petition for adoption."

[4]Dr. Smith also had a sixth child, Valerie, who predeceased him leaving no issue.

15, 1970, William Huyck adopted Brooks under the laws of Oregon.[5]

After the testator's death in 1976, the trustees periodically paid one-half of the trust income to Dr. Smith pursuant to the terms of the will. When Dr. Smith died ten years later, the trustees began to distribute his share among his four surviving children. On October 23, 1987, the trustees made one payment to Brooks from the income of the trust. However, the trustees then became uncertain whether G. L. c. 210, § 7, providing in part that a "person shall by adoption lose his right to inherit," bars Brooks from sharing in the trust income, and are currently holding a one-fifth share of the trust income in escrow.

1. *The testator's intent.* It is axiomatic that "the fundamental rule for the construction of wills is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution and to give effect to that intent unless some positive rule of law forbids." *Fitts* v. *Powell,* 307 Mass. 449, 454 (1940). Accord *Babson* v. *Babson,* 374 Mass. 96, 104 (1977); *Bank of New England, N.A.* v. *McKennan,* 19 Mass. App. Ct. 686, 689 (1985). In this instance, the will does not state explicitly whether the word "issue" includes natural descendants who have been adopted as Brooks was. The testator and the drafter of his will, however, are presumed to have known the law of Massachusetts and the judicial construction of the terms they used. See *McKennan, supra* at 689, and cases cited. Therefore, we turn to this court's definition of "issue" for guidance as to the testator's intent.

"As we have had occasion to state, we ordinarily will construe 'issue' to include all lineal descendants . . . unless we discern a testamentary purpose" to the contrary. *Prince* v. *Prince,* 354 Mass. 588, 591 (1968). Accord *Watson* v. *Gold-*

---

[5]The adoption decree changed Brooks's name to Brooks Caldwell Huyck. Brooks has since changed his name back to Brooks St. John Smith. See note 2, *supra.*

*thwaite*, 345 Mass. 29, 33 (1962); *Young* v. *Jackson*, 321 Mass. 1, 5 (1947); *Welch* v. *Colt*, 228 Mass. 511, 515 (1917); *Jackson* v. *Jackson*, 153 Mass. 374, 377 (1891). See also G. L. c. 4, § 7 Sixteenth (1988 ed.). "Descendants," in turn, has long been held to mean persons "who by consanguinity trace their lineage to the designated ancestor." *Evarts* v. *Davis*, 348 Mass. 487, 489 (1965), and cases cited. Thus, as the biological grandson of Dr. Smith, Brooks at first glance appears to be among Dr. Smith's issue.

However, the Adamson appellees contend that under a line of cases stemming from *Ernst* v. *Rivers*, 233 Mass. 9 (1919), this is not the case. In *Ernst*, this court held that a devise or bequest to "issue" refers to "that class of beneficiaries who would be entitled to take under the law of intestate succession if the designated ancestor had died at the time fixed for ascertaining the class, and also indicates that the members of the class so determined are to share in the same manner and proportions as such persons would share under the statute relating to the distribution of intestate estates." *Id.* at 14. We have followed this holding in a number of subsequent decisions. See, e.g., *Merrimack Valley Nat'l Bank* v. *Grant*, 353 Mass. 145, 148 (1967); *New England Trust Co.* v. *McAleer*, 344 Mass. 107, 111 (1962); *B.M.C. Durfee Trust Co.* v. *Borden*, 329 Mass. 461, 463 (1952). The Adamson appellees argue that, because under G. L. c. 210, § 7, a child loses the right to inherit from intestate biological parents and kindred and because "issue" means persons "who would be entitled to take under the law of intestate succession" (*Ernst, supra*), Brooks is not a member of the class described in the testator's will. We disagree.

In large part, the rule in *Ernst* is intended to avoid competition between parent and child by distributing shares in a gift to "issue" per stirpes, as would the laws of intestacy. *Ernst, supra* at 14. Thus, the rule reflects the principle of construction that "interpreting a will to allow grandchildren and great grandchildren (and their descendants) to take simultaneously, and thus admit children to compete with their living parents, is to be avoided unless such was plainly the

testat[or's] intent." *Evarts, supra* at 489, citing *Ernst, supra.* The concern of infighting between parent and child is not raised by this case, however, since Brooks's father has predeceased him.

Moreover, neither *Ernst* nor the decisions that follow it apply the rule to exclude children who have been adopted from taking as issue of their biological ancestor.[6] It is unlikely that the *Ernst* court and its successors contemplated that adoptees would be barred from taking as issue under wills or trusts of their natural antecedents because, at the time these cases were decided and until 1967, G. L. c. 210, § 7, as amended through St. 1965, c. 252, provided that a "person shall *not* by adoption lose his right to inherit from his natural parents or kindred" (emphasis added). R. L. 1902, c. 154, § 7. See St. 1967, c. 114. Nor does the logic underlying the holding in *Ernst* require excluding adopted children from the definition of "issue" of their biological antecedents because the *Ernst* court, by invoking the law of intestate estates, itself defined "issue" in terms of bloodlines. Thus, neither the facts nor the reasoning of the *Ernst* line of cases leads to the application of G. L. c. 210, § 7, in its current form to restrict the generally accepted meaning of the term "issue."

The statutory evolution of the rules of intestate succession is also significant to our decision. In construing the term "issue" as those who would take under the law of intestate succession, the *Ernst* court made note of R. L. 1902, c. 133, § 1, now codified at G. L. c. 190, § 3 (1988 ed.). See *Ernst, supra* at 15. That statute did not then, nor does it now, exclude adoptees from being among the "issue" of their biological parents. We are not persuaded, therefore, that *Ernst* leads to the conclusion that G. L. c. 210, § 7, is applicable in determining the testator's intent. Rather, G. L. c. 190, the descen-

---

[6]*Moore* v. *Cannon*, 347 Mass. 594 (1964), is not to the contrary. In that case, we applied the intestacy statutes in a case addressing whether an adoptee might take under a testamentary gift to the "issue" of one of his adoptive parents only because the will in question explicitly called for the application of those statutes. *Id.* at 598-599.

dant of the intestacy statute considered in *Ernst*, is more significant in ascertaining the testator's intent.

In sum, this court has long defined "issue" to include all lineal descendants, and, the *Ernst* line of cases notwithstanding, we have never excluded from the term a child adopted out of a testator's family. We conclude, therefore, that the testator intended his gift to "issue" to include any blood descendant adopted out of his family, as Brooks was. We turn to the question whether G. L. c. 210, §§ 6, 7, bar Brooks from sharing in the trust as the testator intended.

2. *The applicability of G. L. c. 210, § 7.* At first glance, G. L. c. 210, § 7 (hereafter § 7), seems to bar Brooks's claim. That statute provides, in pertinent part: "A person shall by adoption lose his right to inherit from his natural parents or kindred."[7] We hold, however, that § 7 applies only to the inheritance of property through intestate succession.

While we have never squarely ruled on this issue, we have consistently referred to § 7 as an intestacy statute. See, e.g., *New England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. 822, 828-829 (1983) (referring to § 7 as an "intestacy law [ ]"); *Katz* v. *Koronchik*, 369 Mass. 125, 125-126 (1975) (§ 7 precludes "an adopted child from inheriting property of his intestate natural kindred"); *Moore* v. *Cannon*, 347 Mass. 594, 597 (1964) (referring to § 7 as a "statute[ ] relating to intestacy"). The parties point to no case citing § 7 as governing the transfer of property by will or trust.[8]

This construction of § 7 comports with the language of the statute. The word "inherit," as a legal term of art, though not necessarily in its popular sense, has been defined as referring to intestate succession by an heir and not to transfers of

---

[7] We note that Brooks does not fall within the exception under § 7 with regard to a child adopted by a natural parent's spouse for two reasons. First, his mother's remarriage did not occur after his father's death, as the exception requires. Second, when the exception was appended to § 7 in 1975, the Legislature explicitly provided that the exception applies only to adoptions decreed after its effective date in 1976. G. L. c. 210, § 7, as amended through St. 1975, c. 769, § 2. Brooks's adoption, decreed in 1970, does not meet this requirement.

[8] See note 6, *supra*.

property by will or trust. See Black's Law Dictionary 783 (6th ed. 1990) (defining "inheritance" as "[p]roperty which descends to heirs on the intestate death of another"). We ascribe to technical, legal terms in statutes their technical meaning. G. L. c. 4, § 6 Third (1988 ed.). We therefore construe the term "inherit" in § 7 in its technical sense.

In addition, § 7 by its terms addresses intestacy only. The first sentence is implicitly limited to intestate succession, providing that adoptees "shall take the same share of that property which the adopting parent *could* dispose of by will" as would a biological child (emphasis added). Similarly, the second sentence addresses intestacy in the context of the intestate death of adoptees. Section 8 by contrast explicitly provides for succession by adoptees under grants, wills, and trusts. See G. L. c. 210, § 8 (1988 ed.). Thus, the language and structure of G. L. c. 210 point to a construction limiting § 7 to intestate succession.

Nevertheless, the Adamson appellees argue that this court should construe § 7 to bar Brooks's claim for policy reasons. The legislative purpose evident in the development of the statutory law of adoption is to put adopted children in the same position as natural children. *Katz* v. *Koronchik*, 369 Mass. 125, 128 (1975). The Adamson appellees argue that permitting adoptees to inherit from a testate natural ancestor would undermine the related goals of integrating children as fully as possible into their adoptive families, severing the relationship of adoptees and their natural families, and maintaining the confidentiality of adoptions.

Even if we assume that a devise or bequest to an adoptee somehow undermines the adoptive family relationship, if the adoption is by a stepparent, where the child's relationship to his natural parents is ordinarily known to all concerned, any adverse effect on the family relationship is less likely to occur. The Legislature, in any event, has spoken on this policy issue. The Massachusetts Uniform Statutory Will Act, G. L. c. 191B, § 1 (1)-(2), inserted by St. 1987, c. 319, § 2, has provided that "an individual adopted by the spouse of a natural parent is also the child [or issue] of either natural par-

ent" for purposes of construing those terms in wills. In light of the Legislature's expression of a public policy to treat persons such as Brooks as issue of the testator, as well as the considerations discussed above, we decline to bar Brooks's interest in the trust assets.

3. *The applicability of G. L. c. 210, § 6.* Finally, the Adamson appellees argue that the first sentence of G. L. c. 210, § 6 (hereafter § 6), precludes Brooks's claim. Section 6 states in relevant part that, following an adoption, "except as regards succession to property, all rights, duties and other legal consequences of the natural relation of child and parent shall . . . terminate between the child so adopted and his natural parents and kindred."[9] The Adamson appellees contend that Brooks's status as his father's "issue," as a "legal consequence[ ] of the 'natural relationship' of child and parent," was dissolved by his adoption. The clause excepting rights related to "succession to property" from the scope of § 6 removes the provision from consideration in this case.

The Adamson appellees suggest that the phrase "succession to property" refers only to intestate property transfers, citing only *Boutlier* v. *Malden*, 226 Mass. 479, 485 (1917), as authority for this proposition. In *Boutlier* this court held that a mother is the next of kin of her adopted son such that an action on her behalf will lie for his wrongful death. *Id.* at 484-485. In so holding, the court ruled: "Manifestly the statutory right of an administrator to recover damages for the death of a person to the use of his surviving next of kin is not a right of succession to property." *Id.* at 484. The court went on to say in dictum that the words "succession to property" in § 6 (then codified at R. L. 1902, c. 154, § 6) refer to intestate succession. *Id.* at 485. This single dictum is too slender a reed to support the Adamson appellees' argument.

A construction limiting the "succession to property" proviso to intestate succession cannot be justified under the traditional canons of statutory construction. We note, first,

---

[9]General Laws c. 210, § 6, is reproduced in pertinent part in note 3, *supra.*

that, if the meaning of § 6 is unclear, it is proper to look to adjacent sections of c. 210, in order that similar terms in different sections of the same statute be given the same meaning in § 6. See *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 334 (1985); *Beeler* v. *Downey*, 387 Mass. 609, 617 (1982); *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council*, 374 Mass. 236, 240 (1978). General Laws c. 210, § 9 (1988 ed.), explicitly applies the phrase "succession to property" to transfers by will or trust as well as under the laws of intestacy. Therefore, it would be inconsistent to adopt a more narrow construction of the phrase in § 6.

In addition, when the Legislature intended to limit the application of a section of c. 210 to intestate succession, it indicated its intent explicitly or by the technical term "inherit," which has traditionally been understood to apply to intestacy. *Supra* at 331-332. Thus, when §§ 6, 7, 8, and 9 are read together, it is clear that the term "succession to property" refers to both testate and intestate succession.

Furthermore, there is nothing in the statute to suggest a legislative intent to cut off a bequest to an "adopted-out" child contrary to the intent of the testator. If such a bar were to be attributed to an adoption decree, then fairness, if not due process, would require that the interests of a child in potential bequests under the wills or trust instruments of any natural ancestors should be ascertained at the time of adoption. It would, therefore, be necessary to appoint a guardian ad litem to represent the child in every adoption proceeding, unnecessarily complicating the process.

For this reason, and because we construe statutory language (where possible) to be consistent with adjacent sections of the same statute, we conclude that the words "except as regards succession to property" in the first sentence of § 6 apply to both testate and intestate succession. Thus, the first sentence of § 6, terminating the adoptee's relationship to his natural kindred, does not bar the testamentary gift here in dispute.

To summarize, we conclude, based on this court's consistent definition of the term, that the testator intended his gift to the "issue" of Dr. Smith to include any blood descendant adopted out of the family, such as Brooks. Further, we conclude that G. L. c. 210, §§ 6 and 7, do not bar Brooks from taking under this trust. Therefore, we instruct the parties that Brooks St. John Smith is entitled to share in the trust income in question. We remand the case to the Probate and Family Court for further proceedings.

*So ordered.*